UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOME QUARTERS REAL ESTATE
GROUP, LLC,

    Plaintiff,

v.

MICHIGAN DATA EXCHANGE, INC.
d/b/a MIREALSOURCE, and
REALCOMP II, LTD.,

    Defendants.

Case No. 07-12090

District Judge Paul V. Gadola
Magistrate Judge R. Steven Whalen

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Before the Court is *Defendant MiRealSource's Motion to Compel Arbitration and for Stay* [Docket #18], filed August 10, 2007. For the reasons set forth below, Defendant's motion is DENIED.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On May 14, 2007, Plaintiff Home Quarters Real Estate Group, LLC ("HQ"), formerly operating as a real estate brokerage, filed suit against Michigan Data Exchange, Inc., d/b/a/ MiRealSource and Realcomp II, Ltd., professional trade associations, alleging violations of the Sherman Act, 15 U.S.C. §1, as well as state law antitrust and common law claims. Plaintiff alleges that in May 2003, "Defendants previously terminated and/or threatened to

-1-

terminate [Plaintiff's] right to access their multiple listing services ("MLS") data as part of their efforts to destroy [Plaintiff's] innovative business model," and also refused "to permit any of [Plaintiff's] listings to be posted on its MLS, causing substantial damages to Plaintiff including market share, lost revenues, and lost profits. *Docket #24* at 2-3; ¶¶24-26. Plaintiff acknowledges that access was restored in August, 2003, "but, by that time, [its] business was in disarray," requiring the company to lay off employees and refund fees. *Id*. at ¶27.

On June 22, 2007, the district court dismissed Plaintiff's state law antitrust and common law claims without prejudice [Docket #6]. Following Plaintiff's motion for reconsideration of the dismissal order [Docket #10], the district court reinstated the state-law antitrust claims on August 15, 2007 [Docket #20].

Defendant, arguing that the Court should compel arbitration, cites a February 14, 2002 Shareholder Application signed by Plaintiff:

> "As a Shareholder of the Michigan Multiple Listing Service, Inc. I agree to abide by the Bylaws and Rules & Regulations of the Michigan Multiple Listing Service, Inc. and to arbitrate all disputes in accordance with the Code of Ethics and the Arbitration Manual of the National Association of REALTORS. . ."

Further, on August 18, 2003, upon reinstatement of MiRealSource's MLS, Plaintiff agreed that,

> "any and all disputes will be arbitrated in accordance with the Code of Ethics and the Arbitration Manual of the National Association of REALTORS."

*Docket #18*, Exhibit 2.

## II. ANALYSIS

### A. General Principles Regarding Arbitration

"[W]hether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court." *City of Detroit Pension Fund v. Prudential Securities Inc.* 91 F.3d 26, 30 (6th Cir. 1996); *Litton Financial Printing Division v. NLRB,* 501 U.S. 190, 208, 111 S.Ct. 2215, 2226, 115 L.Ed.2d 177 (1991). In deciding whether to compel arbitration, the court asks two questions: (1) did the parties enter into a valid and enforceable agreement to arbitrate, and (2) do the claims asserted fall within the scope of the arbitration agreement. *Johns v. Sterling Jewelers, Inc.* 2006 WL 3759905, *1 (E.D.Mich.,2006)(Gadola, J.), *citing AT & T Techs., Inc. v. Comms. Workers of Am .,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

"When a plaintiff has filed an action in a judicial forum after having previously agreed to resolve his or her claims through arbitration, a court must stay the judicial proceedings." *Johns*, *supra*; 9 U.S.C. § 3; *Burden v. Check Into Cash of Ky., LLC,* 267 F.3d 483, 488 (6th Cir.2001), *citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 400, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). "Even when claims arise pursuant to statutory rights, a court has a duty to enforce a valid arbitration agreement under the FAA." *Johns* at *1,; *Stout v. J.D. Bryider,* 228 F.3d 709, 715 (6th Cir.2001). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.* 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *See also Johns* at *1; *Stout,* 228 F.3d at 715 ("'When ambiguities exist as to the

parties' intentions, those ambiguities should be resolved in favor of arbitration'"). Arbitration agreements covering antitrust claims are enforceable. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 312 (6th Cir. 2000); *Mitsubishi Motors Corp.*, *supra*, 473 U.S. at 640, 105 S.Ct. at 3360.

### B. The Present Antitrust Claims Clearly Fall Outside the Scope of the Agreements to Arbitrate

Defendant contends that Plaintiff's agreement to resolve "any and all disputes" in accordance with the Code of Ethics and the Arbitration Manual of the National Association of Realtors ("NAR") mandates staying the case pending arbitration. Defendant argues pursuant to *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 640, 105 S.Ct. 3346, 3360, 87 L.Ed.2d 444 (1986), that the Sherman Act and state law antitrust claims are appropriate for arbitration. Defendant argues further that "any limitations in NAR's procedures" which would compromise its ability to adjudicate an antitrust claim "does not negate the obligation to arbitrate." *Docket #28* at 2.

Under the unambiguous terms of both the February and August, 2003 documents, Plaintiff agreed "to arbitrate all disputes in accordance with the Code of Ethics and the Arbitration Manual of the National Association of Realtors." The NAR Manual was thus incorporated by reference into the agreement to arbitrate. The agreement, modified by the "in accordance with" clause requires examination of the Code of Ethics and NAR Manual.

By even the most liberal reading of the NAR Manual, the definition of an "arbitrable

dispute" does not encompass the present antitrust claims. *AT & T Techs., Inc. v. Comms. Workers of Am, supra,* 475 U.S. at 649; *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, *supra,* 473 U.S. at 628. Neither party disputes that the arbitration clause, which purportedly encompasses "all disputes," must be placed in the context of the NAR's Code of Ethics and Arbitration Manual.[1] Article 17 of the Code of Ethics states that,

> "[i]n the event of contractual disputes or specific non-contractual disputes as defined in Standard of Practice 17-4 between Realtors . . . [parties] shall submit the dispute to arbitration in accordance with the regulation of their board or Boards rather than litigate the matter."[2]

However, Part Ten - *Arbitration of Disputes*, Section 43, makes clear that the Plaintiff's claims that Defendants violated federal and Michigan antitrust laws by interfering

---

[1] In contrast to the arbitration clause presently in dispute, which requires arbitration "in accordance" with the NAR Manual, the American Arbitration Association's standard arbitration clause is not restrictive, stating plainly that, "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration." *Vemco, Inc. v. Flakt, Inc*., 1996 WL 506495, *3 (6th Cir. 1996); *See also, Associated Indem. Corp. v. Home Ins. Co.,* 1994 WL 59001, *2 (6th Cir. 1994).

[2] In addition to contractual disputes which can be arbitrated, NAR's Standard of Practice 17-4 lists four instances of non-contractual disputes which are subject to arbitration. These non-contractual disputes relate to situations in which 1) a listing broker has compensated multiple procuring brokers. 2) "Where a buyer or tenant representative is compensated by the seller or landlord, and not by the listing broker." 3) "Where a buyer or tenant representative is compensated by the buyer or tenant and as a result, the listing broker reduces the commission owned by the seller or landlord. . ." 4) Where two or more listing brokers claim entitlement to compensation puruant to open listings with a seller or landlord. . ." All of the cited non-contractual disputes pertain to the allotment of commissions and are inapplicable to present Plaintiff's antitrust claims.

with Plaintiff's right to access MLS data fall outside the scope of an arbitrable dispute as defined by the NAR Manual:

> "[a]s used in Article 17 . . . the terms 'dispute' and 'arbitrable matter' are defined as those contractual issue and questions, and specific non-contractual issues and questions defined in Standard of Practice 17-4, including *entitlement to commissions and compensation in cooperative transactions, that arise out of the business relationships between Realtors and between Realtors and their clients and customers*."

(Emphasis added). Moreover, Appendix 1 to Part Ten of the Manual, *Arbitrable Issues*, states as follows:

> "To conduct arbitration hearings, Boards of Realtors, acting through their Grievance Committees and Professional Standards Committees, must have a clear understanding of what constitutes an arbitrable issue. *An arbitrable issue includes a contractual question arising out of a transaction between parties to a contract in addition to certain specified non-contractual issues set forth in Standard of Practice 17-4.*"

(Emphasis added). The Appendix's list of "arbitrable" disputes all pertain to the division of real estate commissions between multiple brokers. None of the instances cited in the Appendix are remotely related to the allegation that Defendants "shut off [Plaintiff's] access to their respective MLSs within approximately 24 hours of one another" in an attempt to restrain competition. *Docket #24* at 9.

Again, the NAR Manual was incorporated in its entirety into the agreement between the parties. Neither the agreement nor the Manual is ambiguous. The antitrust claims in this case are not within the scope of the agreement to arbitrate.

In addition, arbitration is inappropriate because the factual allegations of antitrust

-6-

violations (Defendants conspired to restrain competition by cutting off Plaintiff's access to critical MLS data necessary to the existence of the real estate operation) can be considered independently of the Application Agreements. "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250-51 (5th Cir.1998).

Recent case law supports the conclusion that Plaintiff's claims are clearly not arbitrable by NAR. In *Hackman v. Dickerson Realtors, Inc.*, 2007 WL 2570297, *4 (N.D.Ill. August 31, 2007), there was an agreement "to arbitrate controversies as specified by [NAR's] Code of Ethics and as further defined and in accordance with procedures in the "Code of Ethics and Arbitration Manual." Observing that "[w]hether a particular issue is subject to arbitration is a matter of contract interpretation," *Id.* at *3, the court found that the NAR Manual was incorporated by reference in the contract, and was thus to be considered in determining whether the dispute ( a tortious interference claim) was within the scope of the arbitration agreement. Noting that Article 17 of the Code of Ethics of NAR listed examples of disputes that, as in the present case, were inapplicable to the claims in question, the court found that Hackman's "general allegations that defendants . . . interfered with his valid business relationships with potential clients by making derogatory statements . . . . in

no way falls under the arbitration agreement."[3]  "Because it can be said with 'positive assurance' that the parties' arbitration agreement is 'not susceptible of an interpretation that covers' this aspect of Count VI, it is not subject to arbitration." *Id*. at *6; *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999); *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582-583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (U.S. 1960). For virtually identical reasons, present Plaintiff's antitrust claims fall outside the "disputes" contemplated by NAR's Manual, which, as in *Hackman*, was incorporated *in its entirety* into the arbitration agreement.

Likewise, I reject Defendant's contention that "any limitation in NAR's procedures does not negate the obligation to arbitrate." *Defendant's Reply Brief, Docket #28* at 2. The Court's finding that Plaintiff is not required to arbitrate its antitrust claims is not based on jurisdictional issues or other possible inadequacies of the arbitral forum to preserve statutory rights, but rather on the fact that the present claims simply fall outside the scope of arbitration as contemplated by the agreements. *AT & T Techs., supra,* 475 U.S. at 649.

---

[3]The arbitration clause analyzed by the *Hackman* court states as follows

"In the event of contractual disputes or specific non-contractual disputes as defined in Standard of Practice 17-4 between REALTORS® (principals) associated with different firms, arising out of their relationship as REALTORS®, the REALTORS® shall submit the dispute to arbitration in accordance with the regulations of their Board or Boards rather than litigate the matter."

*Id.* at *4

Finally, the Court has considered an October 2, 2007 *en banc* Sixth Circuit decision submitted by Defendant following oral argument. *United SteelWorkers of America, AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.,* --- F. 3d ---- (6th Cir. 2007), 2007 WL 2827583 (October 2, 2007). Defendant contends the *Saint Gobain* finding that "the function of federal courts is 'to ascertain whether the party seeking arbitration is making a claim which on its face is governed by the contract'" supports the argument for arbitration of the present case. *Id.* at *1; *United Steelworkers v. Am. Mfg. Co.,supra,* 363 U.S. 564, 567-68.

However, *Saint Gobain,* although finding that whether arbitration was time-barred was a question for the arbitrator rather than the courts, made a distinction between "procedural" questions left the arbitrator (such as timeliness) and "threshold questions of arbitrability that courts should decide." *Id.* at *4. Indeed, *Saint Gobain*, citing the Supreme Court's decisions in *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 82, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), and *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), reaffirmed the bedrock principle that "a court, not an arbitrator, will ordinarily decide an 'arbitrability' question." *Saint Gobain* at *10.

Having found as a "threshold" matter that the present claims are unambiguously outside the scope of the NAR Manual, incorporated by reference in the arbitration agreement, *Saint Gobain* offers no support to the Defendant's quest for arbitration.

### III.  CONCLUSION

Accordingly, Defendant's Motion to Compel Arbitration and for Stay [Docket #18]

is DENIED.[4]


                          S/R. Steven Whalen
                          R. STEVEN WHALEN
                          UNITED STATES MAGISTRATE JUDGE

Dated: October 12, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 12, 2007.


                          S/Gina Wilson
                          Judicial Assistant

---

[4] Given the ruling that the antitrust claims fall outside the scope of the agreement to arbitrate, the Court need not address Plaintiff's argument that Defendants waived any right to arbitrate by failing to invoke arbitration within 180 days.