UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOME QUARTERS REAL ESTATE
GROUP, LLC,

    Plaintiff,

v.

MICHIGAN DATA EXCHANGE, INC.
d/b/a MIREALSOURCE, and
REALCOMP II, LTD.,

    Defendants.

Case No. 07-12090

District Judge Paul V. Gadola
Magistrate Judge R. Steven Whalen

_____/

**REPORT AND RECOMMENDATION**

Before the Court is *Defendant Realcomp II, Ltd's Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* [Docket #26], filed September 17, 2007. This motion has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be DENIED.

    **I. PROCEDURAL AND FACTUAL BACKGROUND**

On May 14, 2007, Plaintiff Home Quarters Real Estate Group, LLC ("HQ"), formerly operating as a real estate brokerage, filed suit against Michigan Data Exchange, Inc., d/b/a/ MiRealSource ("RealSource") and Realcomp II, Ltd. ("Realcomp"), professional trade associations, alleging violations of the Sherman Act, 15 U.S.C. §1, Michigan Antitrust

Reform Act ("MARA"), M.C.L. §445.771 *et seq.*, and common law claims. Plaintiff's second amended complaint, filed August 28, 2007 ("Complaint") [Docket #24], alleges that in May 2003, "Defendants previously terminated and/or threatened to terminate [Plaintiff's] right to access their multiple listing services ("MLS") data as part of their efforts to destroy [Plaintiff's] innovative business model," and also refused "to permit any of [Plaintiff's] listings to be posted on its MLS, causing substantial damages to Plaintiff including market share, lost revenues, and lost profits. *Complaint* at 2-3; ¶¶24-26. Plaintiff acknowledges that access was restored in August, 2003, "but, by that time, [its] business was in disarray," requiring the company to lay off employees and refund fees. *Id.* at ¶27.

On June 22, 2007, the district court dismissed Plaintiff's state law antitrust and common law claims without prejudice [Docket #6]. Following Plaintiff's motion for reconsideration of the dismissal order [Docket #10], the district court reinstated the state-law antitrust claims on August 15, 2007 [Docket #20].

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416,

419 (6th Cir. 2001).

In *Bell Atlantic Corp. V. Twombley*,—U.S.—, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court set forth what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. The Court held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is *plausible* on its face." *Twombly*, at 1974 (emphasis added).

### III. ANALYSIS

Citing *Twombley, supra*, Defendant Realcomp argues first that Plaintiff has failed to plead any agreement between itself and Defendant RealSource giving rise to claims under either the Sherman Act or MARA. *Defendant's Brief*, *Docket #26* at 3. Defendant further contends that Plaintiff has similarly failed to "provide any factual detail for its claim that Realcomp members agreed or conspired to exclude" it from its MLS. *Defendant's Brief* at

4. Defendant contends that the Complaint alleges mere "parallel conduct," which is insufficient to establish "'contract, combination, or conspiracy' under Section 1 of the Sherman Act." *Id*. at 4 (*citing Twombly*, 127 S.Ct. at 1964.).

The Sherman Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. In establishing a violation of the Act, a plaintiff must show that "the defendants contracted, combined or conspired among each other, that the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets, that the objects of and conduct pursuant to that contract or conspiracy were illegal and that the plaintiff was injured as a proximate result of that conspiracy." *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802, 805 (6th Cir. 1988); *Davis-Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1195-96 (6th Cir.1982)(internal citations omitted).

### A. The Second Amended Complaint States a Plausible Claim of Conspiracy by RealSource and Realcomp.

Defendant argues first for dismissal, contending that although the Complaint "contain[s] certain traditional buzzwords such as 'conspiracy,'" it fails to "assert any actual agreement between the parties." *Defendant's Brief* at 4 (*citing Twombly*, S.Ct. at 1966). Contrary to Defendant's seeming contention that the claim founders for lack of the word "agreement," paragraphs 38 and 52 of the Complaint, citing the Sherman Act, allege that Defendants' tandem actions for the period in question "represent[] a contract, combination

or conspiracy." 15 U.S.C. § 1; *Crane, supra,* 854 F.2d at 805. Further, to the extent this argument is construed to fault Plaintiff for failing to allege a specific verbal or written agreement between the Defendant organizations referring to their nearly simultaneous May 20, 2003 actions, it should also be rejected. Plaintiff cannot be expected to make this showing at the pleading stage. *See In re Southeastern Milk Antitrust Litigation,* 2008 WL 2117159, *12 FN 7, (E.D.Tenn. 2008)("The level of factual pleading" sought by the defendant "could rarely, if ever, be met by a plaintiff in an antitrust case before discovery.") Even at the summary judgment stage, "a conspiracy may be demonstrated by direct or circumstantial evidence." *Re/Max Intern., Inc. v. Realty One, Inc.,* 173 F.3d 995, 1009 (6th Cir. 1999).

As a more general matter, the Complaint contains "enough facts to state a claim to relief that is plausible on its face" under §1 of the Sherman Act. *Twombly*, 127 S.Ct. at 1974. Contrary to Defendant's assertion that Plaintiff has failed to provide sufficient "factual matter" to support its claim (*Defendant's Brief* at 3) the Complaint supports its antitrust claim more than adequately by stating that Defendants Realcomp and RealSource (both comprised of Plaintiff's competitors) each closed off Plaintiff's access to its service "within approximately 24 hours." *Docket #24* at ¶26. The factual allegations also state that although Defendants claimed that Plaintiff was in violation of Realcomp and RealSource's Rules and Regulations at the time of the denial of access, it was in fact compliant with the terms of membership in both organizations. *Id.* at ¶¶21-22. The clear inference that Defendants acted in concert (or at least "within approximately 24 hours" of each other) to deny internet access

to a mutual competitor alleges more than "mere . . . parallel business conduct." *Defendant's Brief* at 1. The fact that the Complaint couples its conspiracy claims with the factual allegations that Plaintiff was denied critical website access by both organizations within approximately 24 hours for pretextual reasons again distinguishes it from *Twombly,* in which the Court found "no reason to infer that the companies had agreed among themselves." *Id*. at 1971; *See also Midwest Media Property, L.L.C. v. Symmes Tp., Ohio*, 503 F.3d 456, 472, FN 3 (6th Cir. 2007) (*distinguishing Twombly,* at 1962-63).[1] In contrast, because the temporal proximity of Defendants' actions easily suggests a "plausible," rather than a merely "conceivable" factual basis for its antitrust claim, dismissal is inappropriate. *Twombly*, at 1974; *See also Re/Max Intern., Inc. v. Realty One, Inc., supra,* 173 F.3d at 1009.[2]

    **B. Plaintiff has Also Sufficiently Pled Allegations that Realcomp Acted as a Combination.**

---

[1] *Midwest Media* distinguished *Trombly* by noting that "[r]ather than alleging that such collusion existed . . . the *Twombly* plaintiff merely alleged that the defendants were operating their businesses in a manner which is consistent with collusion, and then invited the courts to conclude that a conspiracy must follow from this circumstantial evidence. *Midwest Media,* 503 F.3d at 472, FN3 (citing *Trombly* at 1962-63). Here, as in *Midwest Media,* the Complaint's conspiracy claims are underpinned with factual allegations suggesting collusion.

[2] *Hackman v. Dickerson Realtors, Inc.,* 520 F.Supp.2d 954, 968, (N.D.Ill.,2007), cited by Defendant for the proposition that dismissal is appropriate under *Twombly,* is distinguishable from the present case. The *Hackman* court noted that the plaintiff alleged "an agreement, at an unspecified time, between certain defendants to boycott him, but presented "no evidence of an agreement" beside "defendants' refusal to do business with him," "defamatory comments" by some defendants, and "the motivation to boycott him." *Id.* In contrast here, Plaintiff alleges at a "specified time," Defendants, acting in concert, rendered him unable to meet the demands of his existing customers. *Complaint* at ¶¶27, 31.

For overlapping reasons, I also disagree with Defendant's argument that Plaintiff has failed to "provide any factual detail" for its allegation that Realcomp members acted in concert to restrain trade. *Defendant's Brief* at 4. Defendant cites paragraph 54 of the Complaint for the proposition that antitrust claims against it stand unsupported by factual allegations. However, paragraph 51 (incorporating by reference the Complaint's previous allegations regarding the May, 2003 events in question) states as follows:

> "[T]he conduct of Realcomp, allegedly taken pursuant to the Realcomp Rules and Regulations at issue and adopted by the members of Realcomp's Board of Governors and/or Realcomp's various constituent realtor boards represents a contract, combination or conspiracy, in the form of a boycott or concerted refusal to deal."

*Id.* at ¶51. Plaintiff's claim that Realcomp itself acted as a combination is sufficiently stated for pleading purposes. The allegation that Realcomp acted as a combination is further supported by the statement that "[b]y virtue of their overlapping membership and market power," both Realcomp and RealSource (comprised of competing brokers) "acted individually as a combination to unreasonably [to] restrain trade." *Id*. at ¶17.

In conclusion, I note that an undesired effect of *Twombly* is that the argument "that plaintiffs have not pleaded sufficient facts appears to have become the mantra of defendants in antitrust cases." *In re Southeastern Milk Antitrust Litigation, supra,* 2008 WL at *12, FN 7. In addition, "while *Twombly* certainly requires of plaintiffs a degree of pleading that may not be required in other types of cases, it was not intended as a shield to be used by antitrust defendants to defeat even a meritorious claim." *Id.* Because the present antitrust claims are supported by sufficient factual allegations, Defendant's reliance on *Twombly* is unavailing.

## IV. CONCLUSION

For these reasons, I recommend that Defendant Realcomp's motion be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated: June 18, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 18, 2008.

s/Susan Jefferson
Case Manager
